Peelle, Ch. J.,
delivered the opinion of the court:
The question here presented arises on the claimants’ demurrer to the fourth and fifth paragraphs of the defendants’ answer as to whether the amount retained by the Government, and the amount due for work performed is liquidated damages or penalty.
The claimants, by a written contract entered into July 31, 1899, with the Government through the Corps of Engineers, U. S. Army, obligated themselves to “ dredge Bay Ridge *520 Channel and Red Hook Channel, New York Harbor, to a depth of forty (40) feet at mean low water, with width of twelve hundred (1,200) feet, excavating and removing twenty-two million (22,000,000) cubic yards, more or less, of material,” for which they were to be paid 10 cents per cubic yard, “ measured in scows or other vessels.”
The work was to be commenced within nine months from the date of the approval of the contract, and was to be prosecuted at the rate of 300,000 cubic yards per month for ten months of the year from March to December until the work was completed.
Supplemental agreements were subsequently entered into making certain changes as to the time of commencing the work, and also as to the amount of excavation per month, neither of which, however, is material to the determination of the question as presented.
By the terms of the original agreement, averred in the petition, it was provided, in substance, that if the claimants failed to commence work at the time specified, or should, in the judgment of the engineer in charge, fail to prosecute faithfully and diligently the work in accordance with the specifications and requirements of the contract, the engineer in charge, with the sanction of the Chief of Engineers, might annul the contract by giving notice to that effect to the claimants; and upon the giving of such notice it was provided that all money or reserved percentages due or to become due to the claimants by reason of said contract “ shall be and become forfeited to the United States,” in which event the Government “ shall be thereupon authorized, if an immediate performance of the work or delivery of the materials be in his opinion required by public exigency, to proceed to provide for the same by open purchase or contract, as prescribed in section 3709 of the Revised Statutes of the United States.”
Further, it was provided that in case of failure on the part of the claimants to complete the contract as agreed upon all sums due and percentages retained should thereby be forfeited to the United States; and the United States should also have the right to recover any or all damages in excess of the sums so forfeited, and also to recover from the claimants, *521 as part of said damages, whatever sums might be expended by the Government in completing said contract in excess of the price stipulated to be paid to the claimants for completing the work.
It is further averred that after the claimants had excavated approximately 11,500,000 cubic yards of the amount to be dredged under the contract the engineer in charge, with the sanction of the Chief of Engineers, annulled the contract, up to which time there was withheld as retained percentages the sum of $60,000 and the further suih of $8,003.50 for work which had then been performed under the contract, making in all the sum of $68,003.50 withheld by the Government from the claimants as aforesaid.
That since the annulment of the contract the Government has failed to cause said work to be completed according to said contract. On the contrary, it has entered into contracts with other parties without the consent of the claimants for only a small portion of said uncompleted work, such new contract being based on specifications, terms, conditions, and requirements, both as to extent and manner of work, wholly and vitally different from those specifically provided in the contract of the claimants.
That in thus entering into a contract without the claimants’ consent different in character and extent from that entered into with the claimants the means of ascertaining the extent of the damages for which the claimants would be liable for completion of the work under their contract can not be determined; and as the retained percentages and amount due were for the defrayment of any damages, if any, which might be sustained by the defendants through the annulment of the contract said sums were not forfeited and transferred to the Government, but are held by the Government as indemnity against such possible damage and loss. Hence this action.
To the petition the defendants answer, (1) by general traverse; (2) they admit the execution of the contract and that the copies set out in the petition are correct; (3) they admit the default in the execution of the contract as alleged, and that the forfeiture thereof was duly declared; (4) they *522 deny that tbe retained percentages are or were intended as a penalty, but, on the contrary, that such retained percentages, amounting to $60,000, were intended to be in the nature of liquidated damages, to become the property of the United States; (5) they deny that the amount of $8,003.50 was intended in the nature of a penalty, but allege, on the contrary, that the amount was in the nature of specific liquidated damages, agreed upon beforehand by the parties to said contract, and that thereunder the same became the property of the United States.
It will be observed that the general traverse puts in issue the question whether the Government has by open purchase or by contract or otherwise proceeded to complete the work according to the contract between the claimants and the Government, or whether the Government has entered into contracts with other parties without the claimants’ consent for the performance of a portion of said work based on specifications and conditions wholly and vitally different from those specifically provided for in the contract with the claimants. This is a question of fact to be determined from the evidence to be adduced and, in the opinion of the court, is a material fact, as upon the annulment of the contract the claimants’ liability is to be determined by the cost to the Government of completing the work according to the terms of said contract, for the payment of which, so far as the same will go, the money so withheld and declared forfeited is to be applied. In other words, if the claimants had failed to commence the work at the time agreed upon and the contract, for that reason, had been annulled, there would have been no money due or retained percentages forfeited, and yet the claimants would have been liable for the cost of performing the work had the Government contracted with other parties to do it, and so when the claimants failed to perform within the agreed time, and for that reason the contract was annulled, all sums due and percentages retained became forfeited to the United States, and in addition the claimants were liable for “ all damages due to such failure in excess of the sums so forfeited ” or money expended for. the completion of said contract “ in excess of the price herein stipu *523 lated to be paid ” for completing tbe work, thus showing that whether the contract be annulled for failure to begin or to complete the work within the time agreed upon the liability of the claimants was to be measured by the damage sustained by the Government by reason of. such failure, including the cost of completing the work according to the terms of the contract.
Manifestly, if the damages sustained should exceed the contract price the claimants would be liable therefor. On the other hand, if the money so forfeited should be sufficient to pay such damages and the cost of completion, that would exhaust the claimants’ liability. What damages, then, were due to such failure other than the sums which might be expended by the Government in completing the work? If we are correct in what we have said, it follows that the sums due and the retained percentages were forfeited not as liquidated damages but to secure, so far as possible, the payment of any actual damages the Government might sustain, including the cost of completing the contract.
' We need not dwell upon the familiar principle that forfeitures under the terms of a contract are not favored in law and that one who seeks to enforce .such forfeiture must clearly establish his right thereto. (Philadelphia, Wilmington & Ohio R. R. Co., 13 How., 307, 340; Hinckley v. Pittsburg, etc., 121 U. S., 264, 274.)
The more recent cases relied upon by the defendants to support their contention that the amount forfeited is liquidated damages are not analogous to the present case. In The Phoenix Iron Co. v. United States (39 C. Cls. R., 526) the specifications made part of the contract expressly provided that “ time is an essential feature of the contract,” “ that the contractor will be required to pay $100 per day for each day of delay in the completion of the contract as liquidated damages and not by way of penalty.” Furthermore, it was provided that such liquidated damage should not exceed $20,000, and was to be determined by the actual current expenditures for rents made necessary by the lack of a new building.
In the case of Ellicott Machine Co. v. United States (43 C. Cls. R., 232) the contract expressly provided that time *524 should be considered as an essential feature of the contract, and that upon failure of the contractor to complete the work as agreed upon he should pay to the United States $25 for each and every day he so delayed, which sum, it was agreed, was “ fixed and determined by the parties thereto as the damages which the United States will suffer by such delay and default, and not by way of penalty.”
In the case of the Sun Printing and Publishing Co. v. Moore (183 U. S., 642) a yacht had been chartered for the purpose of collecting news, and among other things the value of the vessel was fixed in the contract in case of default in the return of the ship; and the court held that the fixing of the value of the vessel could have but one meaning, and that the value agreed upon was to be paid in case of such default; that the sum agreed upon for nonperformance was conclusive upon the parties in the absence of fraud or mutual mistake.
In the case of United States v. Bethlehem Steel Co. (205 U. S., 105), which is the last expression of the Supreme Court on the subject, different bids had been submitted, the highest being for the shortest time of delivery, which was accepted, and the court therefore held that time was of the essence of the contract, and that a stipulation deducting an amount per day equivalent to the difference between the short and long time of delivery should be construed as liquidated damages for whatever delay occurred in the delivery and not as penalty, although the word “ penalty ” was used in some portions of the contract.
We do not think either of the cases referred to are controlling in the present case, as here time was not the essence of the contract nor was any stipulated amount agreed upon as the measure of damages or that the sums so forfeited should be considered as liquidated damages. It is evident from the language of the contract that the forfeiture of the retained percentages and amount due for work performed was by way of additional security to the Government for the performance of the work in the event of the failure of the claimants to complete their contract, and was, therefore, in the nature of penalty and not as liquidated damages.
*525 That the sums so forfeited were not intended by the parties as a measure of compensation is evident from the language of the contract in this, that in addition to the sums so forfeited the 'United States were also to “have the right to recover any and all damages due to such failure in excess of the sums so forfeited,” as well as whatever sums may be expended by the United States in completing the work in excess of the-contract price. There must be at least substantial mutuality in all contracts. If the United States are also to have the right to recover any damages due to such failure in excess of the sums forfeited, then if such damages are less than the sums forfeited the claimants should have credit therefor; and such was evidently the intention of the parties by the language used.
If we are right in this, then it follows that the claimants’ demurrer to the fourth and fifth paragraphs of the defendants’ answer must be sustained, which is accordingly done, and leave given to answer over or to stand on the general traverse, as the defendants may elect.